**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LMT MERCER GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> HOMELAND VINYL PRODUCTS, INC., <br><br> Defendant. | Civil Action No. 20-2219 (ZNQ) (DEA) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon Defendant Homeland Vinyl Products, Inc.'s ("Homeland") motion for attorney fees. (ECF No. 35.) Plaintiff LMT Mercer Group, Inc. ("LMT") opposed (ECF No. 37), and Homeland replied (ECF No. 38). LMT also submitted supplemental authority (ECF No. 39) to which Homeland responded (ECF No. 42). The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Homeland's motion is **DENIED**.

**I.     BACKGROUND**

On April 17, 2007, U.S. Patent No. 7,204,898 (the "'898 Patent"), directed to thermoplastic fencing construction and method of assembly thereof, was issued to LMT as the assignee of inventor James Fattori ("Fattori"). (Pl.'s Opp'n Br. 3, ECF No. 37.) LMT maintains that during

the prosecution of the '898 Application[1], it submitted a 63-page information disclosure statement. (*Id.* at 3.) The U.S. Patent and Trademark Office (the "PTO") examiner then searched for prior art but made no prior art rejections during this initial prosecution. (*Id.*) Thereafter, the '898 Patent was issued. (*Id.*)

On March 11, 2014, U.S. Patent No. 8,668,797 (the "'797 Patent") was issued to LMT. (*Id.*) During prosecution of the '797 Application, LMT submitted a 62-page information disclosure statement. (*Id.* at 4.) LMT maintains that the PTO examiner again searched for prior art but issued the '797 Patent without a prior art rejection. (*Id.*)

On February 28, 2020, LMT filed its Complaint in this matter against Homeland, alleging infringement of the '898 Patent and the '797 Patent (collectively the "Asserted Patents"). (*Id.*) On May 22, 2020, Homeland answered LMT's Complaint and asserted counterclaims of non-infringement and invalidity of the Asserted Patents. (*Id.* at 1-2.) Notably, Homeland did not assert a counterclaim for unenforceability based on any inequitable conduct before the PTO by LMT. (Pl.'s Opp'n Br. 4.)

On October 13, 2020, Homeland filed two *ex parte* reexamination applications against each of the Asserted Patents. (Def.'s Moving Br. 2.) On October 15, 2020, the parties jointly proposed to this Court to stay the litigation pending the outcomes of the reexaminations. (Pl.'s Opp'n Br. 4.) On October 19, 2020, this Court stayed the litigation. (*Id.* at 4-5.) Prior to this Court's stay of the litigation, and during discovery, Homeland and LMT exchanged patent contentions, served and responded to interrogatories, and served and responded to requests for production. (*Id.* at 5.) As part of Homeland's invalidity contentions, Homeland in part relied on two prior art references; the

---

[1] For ease of reference, the Court refers to the applications that issued as the '898 and '797 Patents, respectively, as the "'898 Application" and the "'797 Application." The Court refers to the two applications collectively as "the underlying applications."

parties refer to those two references as Steffes and Lesenskyj.[2] (Def.'s Moving Br. 2; Pl.'s Opp'n Br. 3–4.)

On November 30, 2020, the PTO instituted two separate reexaminations on certain claims of the Asserted Patents. (Pl.'s Opp'n Br. 5, 6.) On April 12, 2021, the PTO issued a first Office Action rejecting those certain claims as obvious "over Steffes . . . in view of Jonelis." (*Id.*) The PTO did not issue any substantive rejections based on Lesenskyj or any other cited references because it deemed the references cumulative. (*Id.* at 5, 6–7; Pl.'s Ex. G *276,[3] ECF No. 37-8; Pl.'s Ex. H *277, ECF No. 37-9.) On June 14, 2021, LMT argued against the rejection of the claims, and contended that "Steffes is non-analogous and immaterial to the claims of the" Asserted Patents. (*Id.* at 6, 7.) On July 16, 2021, the PTO issued a final Office Action maintaining its rejection based on Steffes in view of Jonelis. (*Id.*) Nevertheless, on September 16, 2021, LMT again argued against the materiality of the Steffes reference, submitting to the PTO a declaration by Anatoly Lesenskyj, LMT's President.[4] (*Id.*) His declaration asserted that "clips of the type disclosed in Steffes were contrary to the inventions of the [Asserted Patents] and thus non-analogous and immaterial." (*Id.*) LMT also submitted a declaration from James Babcock, an expert for LMT, who further supported LMT's argument that the combination of Steffes and Jonelis was improper grounds for finding the Asserted Patents unpatentable. (*Id.*) The PTO maintained its rejections. (*Id.*) LMT then appealed

---

[2] Homeland contends that "[t]he Lesensky[j] reference . . . is owned by LMT and lists one of the same inventors, []Fattori, as listed in the Asserted patents." (Def.'s Moving Br. 2.) Moreover, Homeland maintains that "[d]espite being owned by LMT and having the same inventor as the Asserted Patents, the Lesensky[j] reference appears nowhere on the face of the Asserted Patents or in their prosecution history." (*Id.*) Finally, Homeland maintains that LMT was also in possession of the Steffes patent, though it also appears nowhere on the face of the Asserted Patents or in their prosecution history. (*Id.*)

[3] Page numbers preceded by an asterisk refer to the page number on the ECF header.

[4] Anatoly Lesenskyj is "one of the inventors of Homeland's cited" patents that served as the basis for the PTO's unpatentability finding. (Pl.'s Opp'n Br. 6, 7.)

3

to the Patent and Trial Appeal Board (the "PTAB"), and the PTAB affirmed the conclusions of unpatentability. (*Id.*)

After Homeland's success on reexamination, the parties wrote the Court stating that "Plaintiff's [C]omplaint cannot go forward, and Defendant's counterclaims are moot but for the issue of counsel fees." (Correspondence 2, ECF No. 29.) After the parties were unable to come to an agreement as to fees, on April 7, 2023, Homeland moved this Court for attorneys' fees pursuant to 35 U.S.C. § 285 on a theory that LMT withheld material references from the PTO during prosecution of the Asserted Patents. (Def.'s Moving Br. 6–8.) The Court now considers Homeland's motion.

## II.     **LEGAL STANDARD**

Under § 285, the Court may award reasonable attorneys' fees to a prevailing party in a patent case in "exceptional cases." 35 U.S.C. § 285. To satisfy the statute, a moving party must establish that: "(1) they are the prevailing party; (2) the case is exceptional; and (3) the [requested] fees are reasonable." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 05-897, 2018 WL 2378406, at *2 (D.N.J. May 23, 2018) (citation omitted). "There is no precise rule or formula for making a determination as to whether a case is exceptional." *Eagleview Techs., Inc. v. Xactware Sols., Inc.*, 522 F. Supp. 3d 40, 57 (D.N.J. 2021) (internal quotation marks and citation omitted). "Parties may demonstrate that a case is 'exceptional' based on 'the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Takeda Pharm. Co. v. Zydus Pharm. (USA) Inc.*, No. 18-11792, 2022 WL 1567917, at *4 (D.N.J. May 18, 2022) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "Whether a case is exceptional is to be determined on a case-by-case basis, considering the totality of the circumstances." *Eagleview*, 522 F. Supp. 3d at

57 (citing *Octane*, 572 U.S. at 554). The party moving for attorneys' fees is "required to establish their entitlement to fees by a preponderance of the evidence." *Id.* (citing *Octane*, 572 U.S. at 557-58.)

The Supreme Court has identified several nonexclusive factors that a district court may consider when determining whether a given case is "exceptional." *Id.* These factors include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 572 U.S. at 554 n.6. The "exceptional case" designation is "committed to the sound discretion of the district court." *Eagleview*, 522 F. Supp. 3d at 57 (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014)). "In the event the court finds exceptionality, the district court has 'considerable discretion' in determining the amount of a reasonable attorney fee award under § 285." *Id.* (quoting *Homeland Housewares, LLC v. Sorensen Rsch. & Dev. Trust*, 581 F. App'x 877, 880 (Fed. Cir. 2014)).

### III. DISCUSSION

#### A. Parties' Arguments

Homeland contends that attorneys' fees are appropriate in this case because LMT engaged in inequitable conduct before the PTO because it improperly and intentionally withheld the Steffes and Lesenskyj references during the prosecution of underlying patent applications. (*Id.* at 6-8.) Homeland insists that LMT was aware of these references during prosecution and their materiality, and that clear and convincing evidence establishes that LMT intended to deceive the PTO in not disclosing the references. (*See id.* 7-8.)

LMT argues in response that Homeland "never pleaded inequitable conduct" in this matter, and even if they did with the required particularity, LMT's litigation conduct "was objectively and

subjectively reasonable." (Pl.'s Opp'n Br. 10–11.) Specifically, LMT contends that there is no evidence to suggest it [5]withheld the Lesenskyj reference in bad faith, or that it LMT intended to deceive the PTO during prosecution of the underlying applications. (*See id.* 11-12, 15-17.)

B.   Analysis

Generally, "[i]nequitable conduct is an equitable defense to patent infringement that, if proved[,] bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011). As LMT correctly observes, Homeland did not plead or otherwise make any assertion as part of its case in chief that LMT engaged in inequitable conduct before the PTO. (Answer & Countercls. 5-7, ECF No. 11.) While Homeland insists it was under no obligation to do so for the Court to find inequitable conduct, the Court notes that Homeland cites only one Northern District of California case to support this assertion. (Def.'s Reply Br. 3-4, ECF No. 38). Even if the Court credits this case law and assumes that it can *sua sponte* find inequitable conduct, Homeland provides insufficient evidence to suggest that LMT intended to deceive the PTO such that an inequitable conduct finding is appropriate.

To prove inequitable conduct where a patentee withholds a prior art reference from the PTO, the moving party needs to show that: (1) the undisclosed reference was material; and (2) the patentee acted with specific intent to deceive the PTO. *Therasense*, 649 F.3d at 1290-91. As to materiality, a moving party must show "that the []PTO would not have allowed [a patent] claim had it been aware of [an] undisclosed prior art." *Id.* at 1291. As to intent, "[a] finding that [a] misrepresentation or omission amounts to gross negligence or negligence under a 'should have

---

[5] LMT separately asserts that its conduct during this suit was reasonable insofar as it sought in good faith to assert duly-issued patents presumed to be valid that were later invalidated by the PTO.  (Def. Opp. Br. 11.)  It notes that Homeland has failed to assert that LMT's infringement position was either objectively unreasonable or baseless.  (*Id.*)

known' standard does not satisfy" the requirement. *Id.* at 1290 (internal quotation marks and citations omitted). Instead, "[i]n a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Id.* (emphasis omitted) (quoting *Molins PLC v. Trexton, Inc.,* 48 F.3d 1172, 1811 (Fed. Cir. 1995)). In sum, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* Both of the elements of materiality and intent must be shown separately by clear and convincing evidence, and a finding of "materiality alone does not give rise to a presumption of intent to deceive." *Id.*; *Howmedica Osteonics Corp. v. Wright Medical Tech. Inc..*, No. 00-1167, 2010 WL 1372176, at *6 (D.N.J. Mar. 30, 2010) (citing *Praxair v. Advanced Tech. Materials*, 543 F.3d 1306, 1313 (Fed. Cir. 2008)).

Here, while the Steffes and Lesenskyj references may ultimately have been deemed material on reexamination by the PTO, such materiality does not automatically "give rise to a presumption of intent to deceive." *Therasense*, 649 F.3d at 1290 (finding "materiality alone does not give rise to a presumption of intent to deceive"). Nevertheless, Homeland contends that because LMT knew of the Steffes and Lesenskyj references during prosecution,[6] LMT therefore intended to deceive the PTO by not disclosing such references during prosecution of the underlying applications.[7] (Def.'s Moving Br. 7); *see also* 37 C.F.R. § 1.56 (imposing a duty to disclose to the PTO "all information known to that individual to be material to patentability"). Importantly, while circumstantial evidence, such as the evidence Homeland presents, can meet the clear and

---

[6] LMT's prior knowledge of Steffes is disputed. (*See* Def.'s Moving Br. 7; Pl.'s Opp'n Br. 13 n.1.)

[7] Homeland also focuses on the fact that LMT owns the Lesenskyj prior art reference in attempting to prove deceit. (Def.'s Reply Br. 6-7) This argument is unpersuasive because it does nothing to overcome the reasonable inference that LMT and Lesenskyj sincerely did not believe the Lesenskyj prior art reference was material to the Asserted Patents.

convincing standard necessary to show inequitable conduct, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from'" this circumstantial evidence. *Therasense*, 649 F.3d at 1290. Homeland's position that because the PTO on reexamination found Steffes and Lesenskyj material—and LMT was aware of the former and owned the latter—then LMT must have intentionally deceived the PTO, is not the single most reasonable inference to draw from the record. Instead, in the Court's view, the record better supports the inference that LMT did not believe that the Steffes and/or Lesenskyj references were material to the Asserted Patents, and thus, did not disclose them.

To be clear, Homeland presents no clear and convincing evidence to suggest that LMT knew the Lesenskyj and/or Steffes references were material to the prosecution of the underlying applications, let alone that LMT intended to deceive the PTO by withholding them.[8] (*See generally* Def.'s Moving Br.; Def.'s Reply Br.) Indeed, there appears to be at least some evidence that LMT did not believe the Steffes and Lesenskyj references were material to the examination, given that LMT twice-contested and then appealed the PTO's findings of such on reexamination. (Pl.'s Opp'n Br. 5–7; *see* Pl.'s Ex. G *276; Pl.'s Ex. H *277.) In light of the above, and Homeland's lack of persuasive evidence of intent to deceive, the single most reasonable inference for the Court to draw

---

[8] In its briefing, Homeland suggests that LMT should have provided evidence that it subjectively believed that Steffes and/or Lesenskyj were immaterial to the Asserted Patents. (Def.'s Reply 6 (arguing "LMT fails to provide any evidence of its subjective belief as to the materiality of the withheld references")). The opposite, however, is true; *Homeland* must provide clear and convincing evidence that LMT believed the references *were material* to the Asserted Patents and did not disclose them. *Therasense*, 649 F.3d at 1291 ("[T]he accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.") As such, the Court does not credit Homeland's suggestion that the Court should consider LMT's lack of evidence, which attempts to impermissibly shift the burden to LMT to prove its subjective understanding as to the materiality of the prior art references.

from the record is that LMT did not intend to deceive the PTO during prosecution of underlying applications, and therefore, did not engage in inequitable conduct. Accordingly, the Court does not find that this case is exceptional under § 285. An award of attorneys' fees is therefore not warranted.[9]

## IV.     CONCLUSION

For the reasons outlined above, Homeland's motion for attorneys' fees is denied. Insofar as the parties have represented that this is the sole issue remaining in dispute in this suit, the Court will also instruct the parties to confer and submit an appropriate stipulation of dismissal. An Order will issue consistent with this Opinion.

**Date: November 1, 2023**

s/ Zahid N. Quraishi<br>
**ZAHID N. QURAISHI**<br>
**UNITED STATES DISTRICT JUDGE**

---

[9] Homeland separately contends that "[t]his Court can find this case exceptional without making a finding of inequitable conduct by clear and convincing evidence." (Def.'s Moving Br. 6.) The Court declines to do so. There is no evidence in the record—other than circumstantial and conjectural evidence—that LMT sought to deceive the PTO during prosecution of underlying applications, that LMT behaved deceptively or improperly during discovery, or that LMT believed that the Steffes or Lesenskyj prior art references were material. Instead, Homeland asks this Court to conclude from the PTO's findings on reexamination alone that LMT, in bad faith, knowingly deceived the PTO. The Court will not make such a finding simply because LMT's arguments during reexamination proved unsuccessful.